IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION

CRIMINAL NO. 2:09CR11

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| VS. ) | O R D E R |
| ) | |
| ) | |
| KIPLING JOE JONES ) | |
| REBECCA LISA JONES ) | |
| ) | |

**THIS MATTER** came on for hearing before the Court on July 24, 2009, on the Defendants' respective motions to suppress. The Defendants were present with counsel as was the Government. After hearing the testimony and arguments of counsel, the motions were taken under advisement. The Court has now reviewed the evidence presented, the arguments of counsel, and the relevant case law, and concludes the Defendants' motions to suppress should be denied.

## I. BACKGROUND

On June 3, 2009, the Defendants were named in a second superceding indictment with five charges relating to a conspiracy to

manufacture, distribute and dispense, and possess with intent to distribute at least 400 grams of methamphetamine, in violation of various sections of the Controlled Substances Act, Title 21 of the United States Code. **See Second Superceding Indictment, filed June 3, 2009.** Defendant Rebecca Jones filed a motion to suppress on June 5, 2009; her husband and co-Defendant Kipling Jones filed his motion to suppress on July 12, 2009. The Government filed an initial response on July 2, 2009, and a supplement on July 27, 2009. Defendant Kipling Jones filed a reply to the Government's supplemental filing on July 28, 2009.

## II. FINDINGS OF FACT

The undersigned makes the following findings of fact based on the evidence presented during the suppression hearing.

The Government offered the testimony of Dustin Smith, a narcotics officer employed by the Cherokee County Sheriff's Department; Defendants did not offer evidence.

On the evening of October 28, 2008, the Cherokee County Sheriff's Department received a call from narcotics officer Mike Monteith of the Polk County, Tennessee, Sheriff's Department. **Government's Response, at**

**1-2.** Monteith advised the Cheorkee County Sheriff's Department that an officer from the Bradley County, Tennessee Sheriff's Department had notified him about a visit by a sheriff's deputy to the Sky Ridge Main Hospital in Bradley County, to see a man that had been admitted with serious burn injuries which the deputy thought might have been sustained in a meth lab explosion. *Id.* **at 1;** *see also* **Government Exhibits 1 and 2.** Monteith advised that he followed up on this information by visiting the burn victim's house and spoke with the victim's son who informed Monteith that his father had been "at Kip and Becky's house," the Defendants here, earlier that day. *Id.* **at 2.** Further, while at the home, Monteith advised a phone call was received by the son; the caller ID on the phone was cross referenced to reveal the telephone number of the Defendants' residence. *Id*.

Officer Smith testified that based on Monteith's information, he and four other officers from the Cherokee County Sheriff's Department were dispatched to Defendants' house located at 2545 Shoal Creek Road, in Murphy, North Carolina, concerned that there may have been a meth lab explosion at the Defendants' home.

Officer Smith testified that he was familiar with the Defendants as he had been to the residence before and had investigated both at various times since 2003 as part of his duties as a narcotics officer. He testified that recent surveillance of the residence showed that known drug users frequented Defendants' residence and, according to a confidential informant, a fugitive from Georgia was alleged to have been at the Defendants' home. Officer Smith explained that a search of the fugitive's residence in Georgia uncovered a meth lab and he had apparently fled from Georgia upon discovery of the lab. During this surveillance of Defendants' residence, Officer Smith observed Andrew Morrow, a drug user and individual known by Smith to carry firearms, enter and leave the residence. Officer Smith stopped Morrow; upon questioning by Smith, Morrow advised that two other individuals had recently purchased methamphetamine from Defendants at their residence. Officer Smith also testified that he had previously observed one of the individuals under the influence of methamphetamine, exhibiting loud behavior and acting irrationally. One the individuals, Marshall Cornett, was previously arrested after leaving Defendants' residence and charged with possession of methamphetamine.

Smith stated he and the other officers arrived at Defendants' home around 1:00 a.m., and noted six or seven vehicles in the driveway. Smith testified that the officers knocked on the front door and after a few moments Defendants came to the door and met the officers on the front porch. The officers explained that they were there to investigate the burn victim's injuries and a possible meth lab explosion. Defendant Kip Jones informed the officers that he did not know anything about the victim or a meth lab explosion and asked them to leave his property. The officers complied and as they were leaving, one of the deputies radioed the Department's dispatch and was advised that Kip Jones had an outstanding warrant for his arrest and request for extradition from the State of Georgia. The officers returned to Defendants' residence to arrest Kip Jones on the outstanding warrant. **See Government's Exhibit 10 (confirmation of warrant for arrest and notice of intent to extradite).**[1] The officers found Kip in the open doorway of the residence, informed him of the charges and warrant, and then placed him under arrest and handcuffed him; he did not resist the officers. Officer Smith testified that Defendant Rebecca Jones

---

[1] Government Exhibits 1 through 10 were admitted into evidence without objection during the hearing.

was also present during Kip's arrest; although she raised her voice while asking questions regarding her husband's arrest, she did not impede or otherwise cause difficulty for the officers.[2] The officers asked if there were any other people in the house and the Defendants replied that there was not.

Contemporaneous with Kip's arrest, Officer Smith testified he informed Defendants that the officers were going to conduct a protective sweep of the residence, explaining that this was done for the officers' safety. Smith testified from his position on the front porch, he could not see any indication of illegal drugs or ingredients used to make illegal drugs, and he did not hear or see any movement from within the house that would indicate the presence of an unknown individual. However, he further explained that the purpose of the protective sweep was to ensure that no one was hiding in the house and to ascertain whether or not there had been a meth lab explosion that may have resulted in injuries to someone inside.

---

[2] Officer Smith testified that in March 2004, during an arrest of Defendant Rebecca Jones for production of methamphetamine, she kicked one of the officers and it eventually took three officers to place her in handcuffs.

Officer Smith testified that during the sweep, Defendants were in the living room of the house. The officers walked through the living room and kitchen and quickly scanned the remaining rooms on the main floor and upstairs and did not find any other persons in the residence. The officers saw a closed door that led to a set of stairs into the basement; Officer Smith testified he did not open the door because there was a cloth along the bottom of the door, possibly used to retain heat in the main part of the house, and it did not look as though anyone had been through the doorway. Officer Smith testified that he and the other officers noticed a number of items in plain view during their sweep that, based on his training and experience, were precursor materials for the manufacture of methamphetamine. He also testified he smelled a strong odor that he associated with the production of methamphetamine. In the living room, Officer Smith testified he observed a marijuana pipe and a pill that had been crushed into powder. **See Government's Exhibit 9 (picture depicting marijuana pipe and a bowl containing crushed white powder).** Defendant Rebecca Jones was placed under arrest for possession of marijuana. The residence was then secured until officers

could obtain a search warrant and the Defendants were transported to the Sheriff's Department.

### III. DISCUSSION

Law enforcement officers are permitted to conduct a protective sweep of a residence if they have a reasonable belief, supported by specific and articulable facts, that there is an imminent risk to their safety. **See Maryland v. Buie, 494 U.S. 325, 327 (1990)**. The evidence must show "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." **Id. at 334.** Due to the important privacy interests at involved, "[p]rotective sweeps are not justified as a matter of course." **Fishbein v. City of Glenwood Springs, 469 F.3d 957, 962 (10th Cir. 2006).** A protective sweep is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." **Buie, 494 U.S. at 335.** Furthermore, a protective sweep may take "no longer than is necessary" to dispel the concerns that gave rise to the search. **Id. at 335-36.**

In the present case, the evidence shows that there is no question that the officers did not have permission to enter and search the residence. Thus, the only way that the officers could enter the residence to conduct a protective sweep was if at the time of the arrest they had a reasonable belief that was supported by articulable facts that their safety could be at risk. The arrest took place in the doorway of the house and the officers had no way of knowing who or what may have been just inside the door. The officers explained the purpose of their protective sweep to the Defendants and proceeded to walk through the rooms on the main floor and in those located upstairs. There is no evidence that officers rummaged through boxes or personal effects in the house. Rather, as Officer Smith testified, he saw items in plain view that in his experience were used in the production of methamphetamine. Moreover, he smelled a strong odor in the house that signaled the production of methamphetamine. Officer Smith testified that he observed a marijuana pipe in the living room area and based on this discovery, Defendant Rebecca Jones was placed under arrest. There is no question that under North Carolina law the possession of drug paraphernalia, a Class 1 misdemeanor, is an offense for which one can be arrested and ultimately

imprisoned.  *See* **N.C. Gen. Stat § 90-113.22.**  Importantly, Officer Smith testified to several facts supporting his belief that a protective sweep was necessary to ensure the officers' safety: recent surveillance of Defendants' residence revealed known drug users were frequenting the house, some who were known to carry firearms; information that a fugitive from Georgia was staying in the Defendants' residence; and the presence of seven motorized vehicles near the residence and on the property even though Defendants claimed no one else was in the residence.

Defendants contend that the arrest occurred on the front porch thus the officers could not have maintained a reasonable belief that a protective sweep was necessary.  However, Defendants have produced no cases from the Fourth Circuit squarely addressing the issue and the undersigned's research has uncovered none from the Fourth Circuit that are directly on point.  The circuits that have considered the issue have held that officers may conduct such protective sweeps of a residence when an arrest has been made outside the residence in certain circumstances. ***See, e.g., United States v. Colbert*, 76 F.3d 773, 776-77 (6th Cir. 1996) (Declining to impose a bright-line rule limiting protective sweeps to in-home arrests, "in some circumstances, an arrest taking place just**

**outside a home may pose an equally serious threat to arresting officers.");** *United States v. Biggs*, 70 F.3d 913, 916 (6th Cir. 1995); *United States v. Henry*, 48 F.3d 1282, 1284 (D.C. Cir. 1995); *United States v. Oguns*, 921 F.2d 442, 446-47 (2d Cir. 1990); *United States v. Tisdale*, 921 F.2d 1095, 1097 (10th Cir. 1990).

The undersigned finds that, even assuming the arrest took place just outside the front door, such does not undermine the legality of the protective sweep. The officers had sufficient facts to support a reasonable belief that their safety could be at risk while executing the arrest. Accordingly, the Defendants' motions to suppress are denied.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Kipling Jones' motion to suppress is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Rebecca Jones' motion to suppress is **DENIED.**

Signed: July 29, 2009

*[signature]*

Lacy H. Thornburg
United States District Judge